## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| STAFFING NOW, INC., | ) | |
| d/b/a FRIENDS & COMPANY | ) | |
| STAFFING SERVICES | ) | |
| | ) | **Case No.** |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| RAUL POSAS, and 4STAFF, LLC | ) | |
| | ) | |
| Defendants. | ) | |

### COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiff, Staffing Now, Inc., d/b/a Friends & Company Staffing Services ("SNI"), by and through its attorneys, for its Complaint against Defendants, Raul Posas and 4Staff, LLC, states as follows:

### NATURE OF THE ACTION

1.      This is an action seeking injunctive relief and monetary damages arising from Defendant, Raul Posas's, violation of the Computer Fraud and Abuse Act, his breach of his Employment and Non-Competition Agreement with SNI, his misappropriation of SNI's confidential and proprietary information acquired during his employment with SNI, his unjust enrichment and fraud.  SNI also asserts claims against Defendant, 4Staff, LLC, for its intentional interference with Posas's contractual obligations and fostering of his illegal and tortious conduct and its misappropriation of SNI's confidential and proprietary information.

### PARTIES

2.      Plaintiff, Staffing Now, Inc. ("SNI") is a Delaware corporation having its corporate headquarters in West Des Moines, Iowa.  SNI is in the staffing business, placing employees on a temporary and permanent basis throughout the United States including in the

1

greater Washington, D.C. area.  SNI operates an office located at 4350 N. Fairfax Drive, Suite 840, Arlington, Virginia 22203 as well as four (4) other offices in the greater Washington, D.C. area.  SNI does business at its Metro DC locations under the assumed name "Friends and Company."

3.      Defendant, Raul Posas ("Posas") is a former Division Manager for SNI who resides at 650 L Street NW, Washington, D.C. 20002.

4.      Defendant, 4Staff, LLC ("4Staff") is a competitor of SNI in the staffing industry located at 1001 G Street NW, Suite 425 West, Washington, D.C., 20001.  4Staff, like SNI, also specializes in placing temporary and permanent employees throughout the greater Washington, D.C. area.

## JURISDICTION AND VENUE

5.      This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, based on a claim arising under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq.*, and supplemental jurisdiction over SNI's tort and contract claims pursuant to 28 U.S.C. § 1367.

6.      This Court has jurisdiction over Posas and 4Staff and venue is proper in this District pursuant to 28 U.S.C. § 1391 because Posas resides in Washington, D.C. and 4Staff has its principal place of business in Washington, D.C.

## POSAS'S EMPLOYMENT AGREEMENT WITH SNI

7.      On or about March 3, 2005, SNI hired Posas as a Staffing Manager in its Arlington, Virginia office.

8.      As a condition of his employment at SNI, on March 3, 2005, Posas and SNI executed an Employment and Non-Competition Agreement, a true and correct copy of which is attached hereto as Exhibit A (the "Employment Agreement").

9.      In paragraph 6 of his Employment Agreement, Posas agreed, *inter alia*, that during and after his employment with SNI, he would not directly or indirectly use, disclose furnish or provide unauthorized access to SNI's Confidential Business Information (as defined in the Employment Agreement) and that, at the termination of his employment with SNI, he would return all such Confidential Business Information.

10.     In paragraph 7 of his Employment Agreement, Posas agreed, *inter alia*, that for a period of twelve (12) months after the termination of his employment with SNI, he would not: (a) work for, be employed by or be an officer, director, shareholder or partner of, or otherwise own an interest, in any entity competing with SNI within a 50-mile radius of any SNI office; (b) solicit, directly or indirectly, any of SNI's customers for any competing business or entity; or (c) solicit, induce, or attempt to induce any current, past or future employee, including any permanent or temporary employee or candidate of SNI, to leave SNI's employ.

11.     In paragraph 9 of his Employment Agreement, Posas acknowledged that the covenants contained in paragraphs 6 and 7 were reasonable and necessary to protect and maintain SNI's proprietary and other legitimate business interests and that the enforcement of those covenants would not prevent him from earning a livelihood.  Posas further acknowledged that, in the event of his breach or threatened breach of these paragraphs, SNI would be irreparably harmed and would have no adequate remedy at law, and, therefore, temporary and permanent injunctive relief would be appropriate remedies against such breach or threatened breach.

12.     In paragraph 12 of the Employment Agreement, Posas agreed that the Employment Agreement would be construed under the laws of the State of Iowa.

3

13.    In paragraph 14 of the Employment Agreement, Posas agreed that in the event it became necessary for SNI to seek judicial remedies against the breach or threatened breach of the agreement, the prevailing party would be entitled to recover all costs of such judicial action, including reasonable attorneys' fees.

## POSAS'S EMPLOYMENT AT SNI

14.    From March 2005 through March 2006, Posas worked for SNI as a Staffing Manager in SNI's Arlington, Virginia office.  Posas's principal duties in this position involved solicitation of customers for staffing services, recruitment of candidates and filling orders for temporary and permanent placements.

15.    In March 2006, SNI promoted Posas to a Division Manager.  Posas' duties in this position included supervision of Staffing Managers in SNI's Temporary Administrative Division, as well as solicitation of customers and candidates and placement of candidates.

16.    In the course of his employment at SNI, Posas had access to a variety of Confidential Business Information, including, but not limited to, SNI's customer database, customer contacts, customer preferences, lists and qualifications of employment candidates, pricing information, lists of open and pending orders, and documents pertaining to SNI's procedures, organization, plans, objectives and strategies in the temporary and permanent employee placement business.  SNI was willing to provide Posas access to this confidential and proprietary information only because he had signed an Employment Agreement restricting his use of this information and his subsequent employment by SNI's competitors.

17.    SNI's customers, customer relationships and customer information are likely the most important and valuable assets of its business.  The majority of SNI's employees are focused on building and maintaining customer relationships.  These relationships are built over a long

4

period of time and customer loyalty depends upon maintaining a reputation of trustworthiness and reliability. Among other resources, SNI has created over many years and through the efforts of many of its employees a database of its customer information that contains, among other things, the names of key contacts, contact history, order history, customer preferences and pricing. This was among the Confidential Business Information to which SNI provided Posas access.

18.     Another critical piece of Confidential Business Information is SNI's pending customer orders. The principal focus of SNI's business is to obtain customer orders for available temporary and permanent positions to fill those orders as quickly as possible. The staffing business is very competitive and the details of SNI's pending orders are highly confidential, insofar as disclosure of this information could lead to a competitor filling the order. As an SNI employee, Posas had access to SNI's pending orders and to lists and resumes of candidates who could potentially fill these orders.

19.     SNI spends hundreds of thousands of dollars per year on developing and updating its candidate forms and questionnaires, Interview Preparation Information documents, Interview Worksheets, sample correspondence, scripts, training materials and other Confidential Business Information.

20.     On August 3, 2007, Posas resigned his employment with SNI. At the time of his resignation, Posas claimed that he was resigning because he had contracted the AIDS virus and could no longer fulfill his working obligations due to this illness.

21.     SNI has a policy in place, and had such a policy in place during its employment of Posas, which requires that, in order to receive incentive compensation, employees must be active employees of SNI at the close of business on the pay date for the incentive pay period.

22.      Due to Posas's representation that he had contracted AIDS and could no longer fulfill his working obligations due to his illness, SNI waived its policy requiring employees to be active employees at the close of business on the pay date for an incentive pay period, and provided Posas with a check in the amount of $1742.80, representing his incentive pay for the period from June 25, 2007 to July 29, 2007.

23.      SNI subsequently discovered that prior to his resignation, Posas had emailed to his personal email account (posasraul@yahoo.com) various SNI confidential and proprietary documents, including multiple candidate resumes, SNI forms and questionnaires, SNI Interview Preparation Information documents, Interview Worksheets, sample correspondence, scripts to use with clients and candidates, worksheets, training materials and other Confidential Business Information.

24.      Upon information and belief, Posas took or copied other Confidential Business Information of SNI prior to his planned departure.

## POSAS'S BREACH OF HIS RESTRICTIVE COVENANT

25.      On or about August 30, 2007, SNI learned that Posas's representation that he was unable to continue working due to his illness was false and that Posas was in fact employed at 4Staff, working within a 50 mile radius of SNI's Arlington, Virginia office and four (4) other SNI offices located in the greater Washington, D.C. area.

26.      4Staff is a direct competitor of SNI in the permanent and temporary staffing market in Washington, D.C.   Moreover, 4Staff is owned by a former SNI Regional Vice President, Mark Roush ("Roush"), who himself left SNI and started 4Staff in violation of his contractual obligations to SNI and has since been competing for SNI's customers.

27.    After learning of Posas's employment at 4Staff and his numerous violations of his Employment Agreement, SNI contacted 4Staff, advised 4Staff of the terms of Posas's restrictive covenants and Posas' violations thereof, including Posas's misappropriation of Confidential Business Information from SNI's computer systems, and requested that Posas and 4Staff agree that Posas would not solicit SNI's customers or employees or disclose or use SNI's Confidential Business Information during his employment at 4Staff.    SNI further requested that 4Staff immediately return all of SNI's Confidential Business Information.

28.    Posas and 4 Staff have refused to provide any meaningful assurances that they will respect Posas's contractual obligations to SNI or refrain from using the Confidential Business Information that Posas misappropriated shortly before joining 4Staff.  In fact, Posas and 4Staff have refused to even return SNI's Confidential Business Information to it.

## COUNT I – VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT (POSAS)
### (18 U.S.C. § 1030 *et seq.*)

29.    SNI incorporates and realleges paragraphs 1 through 28 above as paragraph 29.

30.    The SNI computer assigned to Posas as well as the SNI computer network are "protected computers" which are used across state lines in interstate commerce, have internet access across state lines, and were used to transfer SNI information concerning its services in interstate commerce.

31.    SNI did not authorize Posas to transmit the information available through his SNI computer or on the SNI computer network to parties unaffiliated with SNI, or to his personal email account (posasraul@yahoo.com).  Indeed, both Posas's Employment Agreement and SNI's policies specifically prohibited it.

32.    Through his actions, Posas has:

a. Knowingly caused the transmission of a program, information, code or command and, as a result of such conduct, intentionally caused damage without authorization to a protected computer in excess of $5,000 in violation of 18 U.S.C. § 1030(a)(5)(A)(i);

b. Intentionally accessed a protected computer without authorization, and as a result of such conduct, recklessly caused damage in excess of $5,000 in violation of 18 U.S.C. § 1030(a)(5)(A)(ii);

c. Intentionally accessed a protected computer without authorization, and as a result of such conduct, caused damage in excess of $5,000 in violation of 18 U.S.C. § 1030(a)(5)(A)(iii); or

d. Knowingly and with intent to defraud, accessed a protected computer without authorization, or exceeded his authorized access, and by means of such conduct, furthered the intended fraud and obtained valuable information resulting in damage exceeding $5,000 in violation of 18 U.S.C. § 1030(a)(4).

33. SNI spends hundreds of thousands of dollars each year on developing and updating its Confidential Business Information, which information Posas unlawfully took from SNI's protected computers. Moreover, SNI's loss of even one candidate placement due to Posas's unlawful actions is likely to exceed $5,000 as SNI is paid a percentage of the candidate placement's annual salary. Accordingly, as a result of Posas's actions, SNI has suffered damages in excess of $5,000, in an amount to be determined at the trial of this matter.

## COUNT II – BREACH OF CONFIDENTIALITY AGREEMENT (POSAS)

34. SNI incorporates and realleges paragraphs 1 through 28 above as paragraph 34.

35. Paragraph 6 of Posas's Employment Agreement provides:

6. <u>Disclosure or Misuse of Confidential Business Information</u>. Employee shall not, during the term hereof or thereafter, directly or indirectly use, disclose, furnish or provide unauthorized access to any Confidential Business Information obtained while he/she was in the employ of Employer, including, without limitation, (a) information with respect to any customer, client, applicant or employee of Employer, whether temporary or permanent in nature, or (b) information with respect to the procedures, advertising, finances, organization, personnel, plans, objectives or strategies of Employer in the temporary and permanent employee placement business. Upon termination of this Agreement, Employee shall promptly deliver to Employer originals and any copies of

Employer's Confidential Business Information, including records, manuals, training material, and other property belonging to Employer or used in connection with Employer's business. This provision shall survive the termination of this Agreement.

36.    Posas has breached paragraph 6 of his Employment Agreement by, *inter alia*, using and divulging SNI's Confidential Business Information in order to solicit SNI's customers and to otherwise benefit SNI's direct competitor and Posas's current employer, 4Staff.

37.    Posas further breached paragraph 6 of his Employment Agreement by not only failing to return candidate resumes, SNI forms and questionnaires, SNI Interview Preparation Information documents, Interview Worksheets, sample correspondence, scripts to use with clients and candidates, worksheets, training materials and other Confidential Business Information, but purposely and surreptitiously misappropriating this and other information in order to utilize it in his current employment at 4Staff.

38.    SNI has suffered damages as a result of Posas's breach and has been irreparably harmed by, *inter alia*, the loss of valuable client relationships and goodwill, the loss of reputation in the marketplace and the competitive advantage that will be gained by others as a consequence of Posas's actions.

39.    SNI does not have an adequate remedy at law to compensate it for the losses it has suffered as a consequence of Posas's breach of his Employment Agreement.

40.    The irreparable harm suffered by SNI as a consequence of the breach of Posas's contractual obligations to SNI vastly outweighs any irreparable harm that Posas will suffer as a result of the enforcement of those obligations, particularly insofar as Posas has agreed that his restrictive covenants will not prevent him from earning a livelihood and that injunctive relief is an appropriate remedy for his breach or threatened breach of those restrictive covenants.

## COUNT III – BREACH OF NON-COMPETE AGREEMENT (POSAS)

41.    SNI incorporates and realleges paragraphs 1 through 28 above as paragraph 41.

42.    Paragraph 7(a) of Posas's Employment Agreement provides:

> 7.    <u>Restrictive Covenant</u>.  As a material part of this Agreement, and in consideration of employment and the other consideration provided in this Agreement, Employee agrees he/she shall not, for a period of twelve (12) months after the termination of Employee's employment for any reason:
>
> (a)    work for, be employed by or be an officer, director, shareholder or partner of, or otherwise own any interest in, any entity competing with Employer, including any business or entity engaged in the business of placing temporary and/or permanent employees or candidates, within a 50-mile radius from any office of Employer.

43.    Posas has directly breached paragraph 7(a) of his Employment Agreement by accepting a position with 4Staff, a direct competitor of SNI, within 50 miles of SNI's Arlington, VA office and four (4) other SNI offices located in the greater Washington, D.C. area.

44.    SNI has suffered damages as a result of Posas's breach and has been irreparably harmed by, *inter alia*, the loss of valuable client relationships and goodwill, the loss of reputation in the marketplace and the competitive advantage that will be gained by others as a consequence of Posas's actions.

45.    SNI does not have an adequate remedy at law to compensate it for the losses it has suffered as a consequence of Posas's breach of his Employment Agreement.

46.    The irreparable harm suffered by SNI as a consequence of the breach of Posas's contractual obligations to SNI vastly outweighs any irreparable harm that Posas will suffer as a result of the enforcement of those obligations, particularly insofar as Posas has agreed that his restrictive covenants will not prevent him from earning a livelihood and that injunctive relief is an appropriate remedy for his breach or threatened breach of those restrictive covenants.

## COUNT IV – BREACH OF NON-SOLICITATION AGREEMENT (POSAS)

47.    SNI incorporates and realleges paragraphs 1 through 28 above as paragraph 47.

48.    Paragraph 7(b) of Posas's Employment Agreement provides:

> 7.    <u>Restrictive Covenant</u>.  As a material part of this Agreement, and in consideration of employment and the other consideration provided in this Agreement, Employee agrees he/she shall not, for a period of twelve (12) months after the termination of Employee's employment for any reason:
>
> (b)    solicit, directly or indirectly, any of Employer's customers for any business or entity competing with Employer, including any business or entity engaged in the business of placing temporary and/or permanent employees or candidates.  Employer's customers, for purposes of this Agreement, shall include all persons and entities for whom the Employer performs or has performed services within the twelve (12) months preceding Employee's termination of employment, regardless of whether or not such customers were previous customers of Employee.

49.    Upon information and belief, Posas has breached paragraph 7(b) of his Employment Agreement by soliciting SNI's customers and candidates on behalf of 4Staff, including but not limited to the candidates whose resumes and other information Posas emailed to himself before leaving SNI, in violation of his Employment Agreement and federal law.

50.    SNI has suffered damages as a result of Posas's breach and has been irreparably harmed by, *inter alia*, the loss of valuable client relationships and goodwill, the loss of reputation in the marketplace and the competitive advantage that will be gained by others as a consequence of Posas's actions.

51.    SNI does not have an adequate remedy at law to compensate it for the losses it has suffered as a consequence of Posas's breach of his Employment Agreement.

52.    The irreparable harm suffered by SNI as a consequence of the breach of Posas's contractual obligations to SNI vastly outweigh any irreparable harm that Posas will suffer as a result of the enforcement of those obligations, particularly insofar as Posas has agreed that his

restrictive covenants will not prevent him from earning a livelihood and that injunctive relief is an appropriate remedy for his breach or threatened breach of those restrictive covenants.

## COUNT V – UNJUST ENRICHMENT (POSAS)

53.     SNI incorporates and realleges paragraphs 1 through 28 above as paragraph 53.

54.     SNI conferred a benefit upon Posas when it waived its policy and provided him with an incentive pay check in the amount of $1742.80.

55.     In providing this benefit, SNI relied on Posas's false representation that he was unable to work due to having contracted a potentially deadly disease.

56.     Posas has retained the check which SNI provided to him.

57.     Under the circumstances of SNI's reliance on Posas's false representations concerning his health condition and his ability to work, Posas's retention of the $1742.80 check is unjust.

58.     SNI has suffered damages as a result of Posas's actions in retaining the incentive check that he obtained through fraudulent and deceptive means.

## COUNT VI – FRAUD (POSAS)

59.     SNI incorporates and realleges paragraphs 1 through 28 above as paragraph 59.

60.     When Posas resigned from SNI he falsely represented to SNI that he was resigning because he had contracted the AIDS virus and could no longer fulfill his working obligations due to his illness.

61.     When Posas falsely represented that he was resigning because he had contracted the AIDS virus and could no longer fulfill his working obligations, Posas knew that his representation was false.

62.     Upon information and belief, Posas falsely represented that he was ill and could no longer fulfill his working obligations with the intent to deceive SNI into waiving its policy and providing Posas with a check in the amount of $1742.80, representing incentive pay to which he was not entitled under SNI's policies.

63.     SNI relied upon Posas's false representation that he had contracted the AIDS virus and could no longer fulfill his working obligations when it waived its policy and paid Posas his incentive pay.

64.     SNI has suffered damages as a result of Posas's deceptive and fraudulent conduct.

**COUNT VII – MISAPPROPRIATION OF TRADE SECRETS (POSAS and 4STAFF)**

65.     SNI incorporates and realleges paragraphs 1 through 28 above as paragraph 65.

66.     The Confidential Business Information which SNI provided to Posas during the course of his employment constitutes trade secrets as defined in the D.C. Uniform Trade Secrets Act, D.C. CODE § 36-401 *et seq.* (the "Act").

67.     Posas knowingly acquired SNI's Confidential Business Information by improper means by unlawfully emailing this information to his personal email account (posasraul@yahoo.com).

68.     Upon information and belief, Posas has used and has disclosed to 4Staff, SNI's Confidential Business Information which Posas and 4Staff have used to solicit and/or induce clients and candidates of SNI to stop doing business with SNI.

69.     Upon information and belief, Posas's taking, disclosure and use of SNI's Confidential Business Information for himself and/or 4Staff constitutes actual and threatened misappropriation of SNI's trade secrets in violation of the Act.

70.     Upon information and belief, 4Staff has violated, and continues to violate, the Act, by misappropriating SNI's Confidential Business Information for its own benefit despite knowing or having reason to know that Posas has a duty to keep such information confidential.

71.     Upon information and belief, Posas's and/or 4Staff's misappropriation has been willful and malicious.

72.     SNI has suffered damages as a result of Posas and 4Staff's past, present and future misappropriation of SNI's Confidential Business Information, and has been irreparably harmed by, *inter alia*, the loss of valuable client relationships and goodwill, the loss of reputation in the marketplace and the competitive advantage that will be gained by others as a result of Posas and 4Staff's actions.

73.     Upon information and belief, Posas and 4Staff's past, present and future misappropriation of SNI's Confidential Business Information is causing and will cause irreparable harm to SNI for which there is no adequate remedy at law.

## COUNT VIII – TORTIOUS INTERFERENCE WITH CONTRACT (4STAFF)

74.     SNI incorporates and realleges paragraphs 1 through 28 above as paragraph 74.

75.     Posas's Employment Agreement with SNI constitutes a valid and enforceable agreement.

76.     Upon information and belief, prior to offering him employment, 4Staff was aware or should have been aware that Posas had entered into an agreement with SNI that, *inter alia*, restricted him from employment and 4Staff from soliciting SNI's customers and employees for a period of one year after the termination of his employment at SNI.  Specifically, Roush was aware that, during his employment at SNI, it was SNI's policy to require all production employees to sign an agreement concerning the same or similar terms as Posas's Employment

14

Agreement. Roush was further aware that the information that Posas illegally took from SNI's computer systems was SNI's Confidential Business Information and that Posas's use of that information violated his Employment Agreement.

77.    To the extent that 4Staff was not previously aware of the terms of Posas's Employment Agreement, SNI made 4Staff aware of these terms upon learning of Posas's employment at 4Staff.

78.    By hiring Posas, continuing to employ him after learning that he was violating the terms of his Employment Agreement, permitting and encouraging Posas to solicit SNI's customers and employees, and using Confidential Business Information illegally obtained from SNI, 4Staff has intentionally procured Posas's breach of his Employment Agreement.

79.    SNI has suffered damages as a result of 4Staff's intentional and tortious interference with Posas's contractual obligations and has been irreparably harmed by, *inter alia*, the loss of valuable client relationships and goodwill, the loss of reputation in the marketplace and the competitive advantage that will be gained by others as a consequence of 4Staff's actions.

### PRAYER FOR RELIEF

Plaintiff, Staffing Now, Inc., d/b/a Friends and Company Staffing Services, therefore respectfully requests that judgment be entered in its favor and against Defendants Raul Posas and 4Staff, LLC and that the Court enter an Order:

(a)    Preliminarily and permanently enjoining: (i) Posas's employment at 4Staff in any capacity for a period of twelve (12) months; (ii) Posas from employment with any other competitor of SNI within 50 miles of any SNI office for a period of twelve (12) months; (iii) Posas from using or disclosing SNI's Confidential Business Information to 4Staff or any third party; (iv) Posas from soliciting directly or indirectly any of SNI's customers for any competing

business or entity for a period of twelve (12) months; and (v) Posas from soliciting or inducing any employee or candidate of SNI to leave SNI's employment for a period of twelve (12) months;

(b)     Compelling Posas and 4Staff to return all of SNI's Confidential Business Information in their possess, custody or control, including any documents or electronic files reflecting or derived from SNI's Confidential Business Information;

(c)     Awarding SNI all damages proximately caused by Posas's breach of his Employment Agreement, in an amount to be determined by the jury;

(d)     Awarding SNI all damages proximately caused by Posas's unjust enrichment and fraud, in an amount to be determined by the jury;

(e)     Awarding SNI such damages and attorneys' fees as are available under the D.C. Uniform Trade Secrets Act, D.C. CODE §36-401 *et seq.*

(f)     Awarding SNI all damages proximately caused by 4Staff's tortious interference with Posas's Employment Agreement, in an amount to be determined by the jury;

(g)     Awarding SNI all damages proximately caused by Posas's violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.*, in an amount to be determined by the jury;

(h)     Awarding SNI all costs and attorneys' fees incurred in the prosecution of this action and the enforcement of Posas's Employment Agreement; and

(i)     Granting all other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff requests a trial by jury on all claims so triable.

Respectfully submitted,

STAFFING NOW, INC.,
d/b/a FRIENDS AND COMPANY
STAFFING SERVICES

By: _____
One of Its Attorneys

Darren William Stanhouse (D.C. Bar # 494623)
McGuireWoods LLP
1050 Connecticut Avenue, NW, Suite 1200
Washington, DC 20036
202.857.1704 (Direct Line)
202.828.2995 (Direct FAX)
dstanhouse@mcguirewoods.com

Of Counsel:

Joel H. Spitz
Michael R. Phillips
McGuireWoods LLP
77 West Wacker Drive
Suite 4100
Chicago, Illinois 60601
312.849.8100 (Phone)
312.849.3690 (FAX)

\4814291.1

**CIVIL COVER SHEET**

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Staffing Now, Inc., d/b/a Friends & Company Staffing Services | Raul Posas, and 4Staff, LLC |
| | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT |
| **(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF (EXCEPT IN U.S. PLAINTIFF CASES) | (IN U.S. PLAINTIFF CASES ONLY) NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |
| **(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |
| Darren W. Stanhouse McGuireWoods LLP 1050 Connecticut Ave., N.W., Suite 1200 Washington, D.C. 20036 202-857-1704 | Raymond C. Baldwin Seyfarth Shaw LLP 815 Connecticut Avenue, N.W., Suite 500 Washington, D.C. 20006-4004 (202) 463-2400 |

**II. BASIS OF JURISDICTION**
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
✗ 3 Federal Question (U.S. Government Not a Party)

○ 2 U.S. Government Defendant
○ 4 Diversity (Indicate Citizenship of Parties in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ✗ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ✗ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

**IV. CASE ASSIGNMENT AND NATURE OF SUIT**
(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

| ○ A. *Antitrust* | ○ B. *Personal Injury/ Malpractice* | ○ C. *Administrative Agency Review* | ✗ D. *Temporary Restraining Order/Preliminary Injunction* |
|---|---|---|---|
| ☐ 410 Antitrust | ☐ 310 Airplane ☐ 315 Airplane Product Liability ☐ 320 Assault, Libel & Slander ☐ 330 Federal Employers Liability ☐ 340 Marine ☐ 345 Marine Product Liability ☐ 350 Motor Vehicle ☐ 355 Motor Vehicle Product Liability ☐ 360 Other Personal Injury ☐ 362 Medical Malpractice ☐ 365 Product Liability ☐ 368 Asbestos Product Liability | ☐ 151 Medicare Act  **Social Security:** ☐ 861 HIA ((1395ff) ☐ 862 Black Lung (923) ☐ 863 DIWC/DIWW (405(g) ☐ 864 SSID Title XVI ☐ 865 RSI (405(g) **Other Statutes** ☐ 891 Agricultural Acts ☐ 892 Economic Stabilization Act ☐ 893 Environmental Matters ☐ 894 Energy Allocation Act ☐ 890 Other Statutory Actions (If Administrative Agency is Involved) | Any nature of suit from any category may be selected for this category of case assignment.  *(If Antitrust, then A governs)* |

| ✗ E. *General Civil (Other)* | OR | ○ F. *Pro Se General Civil* |
|---|---|---|

| **Real Property** ☐ 210 Land Condemnation ☐ 220 Foreclosure ☐ 230 Rent, Lease & Ejectment ☐ 240 Torts to Land ☐ 245 Tort Product Liability ☐ 290 All Other Real Property  **Personal Property** ☐ 370 Other Fraud ☐ 371 Truth in Lending ☐ 380 Other Personal Property Damage ☐ 385 Property Damage Product Liability | **Bankruptcy** ☐ 422 Appeal 28 USC 158 ☐ 423 Withdrawal 28 USC 157  **Prisoner Petitions** ☐ 535 Death Penalty ☐ 540 Mandamus & Other ☐ 550 Civil Rights ☐ 555 Prison Condition  **Property Rights** ☐ 820 Copyrights ☐ 830 Patent ☐ 840 Trademark  **Federal Tax Suits** ☐ 870 Taxes (US plaintiff or defendant ☐ 871 IRS-Third Party 26 USC 7609 | **Forfeiture/Penalty** ☐ 610 Agriculture ☐ 620 Other Food &Drug ☐ 625 Drug Related Seizure of Property 21 USC 881 ☐ 630 Liquor Laws ☐ 640 RR & Truck ☐ 650 Airline Regs ☐ 660 Occupational Safety/Health ☐ 690 Other  **Other Statutes** ☐ 400 State Reapportionment ☐ 430 Banks & Banking ☐ 450 Commerce/ICC Rates/etc. ☐ 460 Deportation | ☐ 470 Racketeer Influenced & Corrupt Organizations ☐ 480 Consumer Credit ☐ 490 Cable/Satellite TV ☐ 810 Selective Service ☐ 850 Securities/Commodities/ Exchange ☐ 875 Customer Challenge 12 USC 3410 ☐ 900 Appeal of fee determination under equal access to Justice ☐ 950 Constitutionality of State Statutes ✗ 890 Other Statutory Actions (if not administrative agency review or Privacy Act |

| ○ **G.** *Habeas Corpus/ 2255* | ○ **H.** *Employment Discrimination* | ○ **I.** *FOIA/PRIVACY ACT* | ○ **J.** *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General ☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation) *(If pro se, select this deck)* | ☐ 895 Freedom of Information Act ☐ 890 Other Statutory Actions (if Privacy Act) *(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ **K.** *Labor/ERISA (non-employment)* | ○ **L.** *Other Civil Rights (non-employment)* | ○ **M.** *Contract* | ○ **N.** *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act ☐ 720 Labor/Mgmt. Relations ☐ 730 Labor/Mgmt. Reporting & Disclosure Act ☐ 740 Labor Railway Act ☐ 790 Other Labor Litigation ☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act) ☐ 443 Housing/Accommodations ☐ 444 Welfare ☐ 440 Other Civil Rights ☐ 445 American w/Disabilities-Employment ☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance ☐ 120 Marine ☐ 130 Miller Act ☐ 140 Negotiable Instrument ☐ 150 Recovery of Overpayment & Enforcement of Judgment ☐ 153 Recovery of Overpayment of Veteran's Benefits ☐ 160 Stockholder's Suits ☐ 190 Other Contracts ☐ 195 Contract Product Liability ☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

☒ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**

18 USC § 1030;  Injunctive + Monetary relief

**VII. REQUESTED IN COMPLAINT**   CHECK IF THIS IS A CLASS ☐ ACTION UNDER F.R.C.P. 23   DEMAND $ _____   Check YES only if demanded in complaint

JURY DEMAND:   YES ☒   NO ☐

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☐   If yes, please complete related case form.

DATE  October 15, 2007   SIGNATURE OF ATTORNEY OF RECORD  _(signature)_

---

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

## EMPLOYMENT AND NON-COMPETITION AGREEMENT

THIS AGREEMENT is made as of ⌐March 5⌐ ⌐⌐, 2004 by and between Staffing Now, Inc., a Delaware corporation ("Employer"), and ⌐Kuul Assit⌐ ("Employee").

WHEREAS, Employer is a full-service specialty staffing firm focusing on the temporary and permanent placement of professionals and para-professionals in fields including, but not limited to, accounting, IT, engineering, legal, light industrial, office clerical, insurance brokerage and human resources administration; and

WHEREAS, Employer also provides unique training to its employees to allow them to perform their job responsibilities at the highest standards; and

WHEREAS, in the course of such training, Employer furnishes its employees, and will furnish Employee, access to its confidential and proprietary policies, procedures, technical material, business data and methods and other trade secrets including, but not limited to, lists of customers, candidates and potential customers and candidates which it has developed, at great expense of both time and money (the "Confidential Business Information"); and

WHEREAS, prior to the creation of this employment relationship, and prior to the termination of any prior employment, Employee was aware that, as a condition of employment with Employer, Employee would be required to enter into an Employment Agreement which, among other things, would limit Employee's right to compete with Employer for a certain reasonable period of time following termination of the employment relationship; and

WHEREAS, Employer and Employee mutually desire to enter into an employment relationship with each other upon the terms and conditions stated in this Agreement.

NOW THEREFORE, in consideration of the premises and the mutual agreements set forth herein, the parties hereto agree as follows:

1.    Employment; Representations and Warranties.

(a)    Employer hereby employs Employee and Employee hereby accepts such employment upon the terms and conditions hereinafter set forth.

(b)    Employee represents and warrants that Employee's execution of this Agreement and the performance of his/her duties as contemplated does not and will not violate any obligation of Employee to previous employers, including, but not limited to, any obligation to keep confidential any information previously acquired by Employee or any obligation restricting Employee's right to work in competition with any prior employers. Employee further represents and warrants that he/she shall not bring to the

EXHIBIT

A

tabbies

employment relationship with Employer any proprietary information, ideas or materials belonging to others.

2. Termination. THE EMPLOYMENT RELATIONSHIP BETWEEN EMPLOYEE AND EMPLOYER SHALL BE "AT WILL" EMPLOYMENT, WHICH MAY BE TERMINATED AT ANY TIME FOR ANY REASON OR NO REASON. Either party, with or without cause, may terminate the employment relationship at any time.

3. Duties. Employee shall have those duties as may be assigned from time to time by Employer, including, but not limited to, the management and development of business relationships with customers and prospective customers, including candidates and prospective candidates, assisting customers in training, hiring of non-temporary employees and supplying such customers with temporary employees. Employee shall have such title as Employer shall indicate from time to time.

4. Performance of Duties. During the term hereof, Employee shall devote his/her entire working time to the performance of his/her duties, as determined from time to time by Employer, and Employee shall perform such duties faithfully, honestly and to the best of his/her ability, and shall not render services to, or enter into employment with, any other person or business entity without the Employer's consent. Employee shall abide by Employer's policies, procedures and practices in effect from time to time and shall act in the best interests of Employer at all times. Employee shall maintain good relations with customers, suppliers and others with whom Employer does business and not engage in any activity that might adversely affect the business or reputation of Employer. Employee shall be present at Employer's place of business each day during Employer's customer office hours, except when conducting business on behalf of Employer or when absent in accordance with Employer's policies.

5. Personnel Policies, Practices and Procedures; Employer's Rights. Employer may change unilaterally any employment policy, procedure, practice or employee benefit program at any time, for any reason, with or without notice. Employee shall not have a right in the continuation of any such policies, practices, procedures, or benefits programs.

6. Disclosure or Misuse of Confidential Business Information. Employee shall not, during the term hereof or thereafter, directly or indirectly, use, disclose, furnish or provide unauthorized access to any Confidential Business Information obtained while he/she was in the employ of Employer, including, without limitation, (a) information with respect to any customer, client, applicant or employee of Employer, whether temporary or permanent in nature, or (b) information with respect to the procedures, advertising, finances, organization, personnel, plans, objectives or strategies of Employer in the temporary and permanent employee placement business. Upon termination of this Agreement, Employee shall promptly deliver to Employer originals and any copies of Employer's Confidential Business Information, including records, manuals, training material, and other property belonging to Employer or used in connection with Employer's business. This provision shall survive the termination of this Agreement.

7. Restrictive Covenant. As a material part of this Agreement, and in consideration of employment and the other consideration provided in this Agreement, Employee agrees he/she

2

shall not, for a period of twelve (12) months after the termination of Employee's employment for any reason:

      (a)    work for, be employed by or be an officer, director, shareholder or partner of, or otherwise own any interest in, any entity competing with Employer, including any business or entity engaged in the business of placing temporary and/or permanent employees or candidates, within a 50-mile radius from any office of Employer;

      (b)    solicit, directly or indirectly, any of Employer's customers for any business or entity competing with Employer, including any business or entity engaged in the business of placing temporary and/or permanent employees or candidates. Employer's customers, for purposes of this Agreement, shall include all persons and entities for whom the Employer performs or has performed services within the twelve (12) months preceding Employee's termination of employment, regardless of whether or not such customers were previously customers of Employee; and

      (c)    solicit, induce, or attempt to induce any other current, past, or future employee, including any permanent or temporary employee or candidate, of Employer to leave Employer's employ.

This restrictive covenant shall survive the termination of this Agreement.

      8.    <u>Wrongful Use of Employer's Name</u>.    After termination of Employee's employment hereunder, Employee shall not indicate on any stationery, business card, advertising, or other business materials that he/she is or was formerly an employee of Employer or of any division or subsidiary of Employer, except in the bona fide submission of resumes and the filling out of applications in the course of seeking employment. This provision shall survive the termination of this Agreement.

      9.    <u>Injunction</u>.  In view of Employee's access to Employer's Confidential Business Information granted hereunder, and in consideration of the value of such property to Employer, Employee acknowledges that the non-disclosure covenants and the restrictive covenants set forth in Sections 6 and 7, are reasonable and necessary to protect and maintain the proprietary and other legitimate business interests of Employer, and that the enforcement thereof would not prevent Employee from earning a livelihood. In the event of a breach or threatened breach by Employee of any such covenant, Employee acknowledges that Employer would be irreparably harmed and that the full extent of injury resulting therefrom would be impossible to calculate and Employer therefore would not have an adequate remedy at law. Accordingly, Employee acknowledges that temporary and permanent injunctive relief would be appropriate remedies against such breach or threatened breach, without bond or security; <u>provided</u>, that nothing herein shall be construed as limiting any other legal or equitable remedies Employer might have. This provision shall survive the termination of this Agreement.

      10.    <u>Waiver</u>.  Failure of any party to insist upon strict compliance with any of the terms, covenants and conditions hereof shall not be deemed a waiver of the right to insist upon compliance with such terms, covenants or conditions or a waiver of any similar right hereunder at any subsequent time.

3

11.  Severability. The provisions of this Agreement are severable. If any provision is found by any court of competent jurisdiction to be unreasonable and invalid, that determination shall not affect the enforceability of the other provisions. Furthermore, if any of the restrictions against various post-employment activities are found to be unreasonable and invalid, the judicial body before which the matter is pending shall reform the restriction to the maximum extent it deems to be valid. The restriction shall remain effective so long as the same is not unreasonable, arbitrary or against policy.

12.  Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State of Iowa.

13.  Entire Agreement. This instrument contains the entire agreement of the parties. No provision of this Agreement may be changed or waived except by an agreement in writing signed by the party against whom enforcement of any such waiver or change is sought. No employee manual, policy statement or similar item issued from time to time by Employer to its employees shall constitute part of any employment agreement between Employer and Employee or modify the terms of this Agreement in any way.

14.  Attorneys' Fees. In the event it becomes necessary to seek judicial remedies for the breach or threatened breach of this Agreement, the prevailing party shall be entitled, in addition to all other remedies, to recover from the non-prevailing party all costs of such judicial action, including reasonable attorneys' fees and paralegal fees and all such costs related to any appeal.

15.  Arbitration. Except for any dispute involving enforcement of Sections 6 and 7 and application for injunctive relief provided by Section 9, any dispute or claim arising out of or relating to Employee's employment or any provision of this Agreement, whether based in contract, or tort or otherwise, shall be submitted to arbitration pursuant to the commercial arbitration rules of the American Arbitration Association. This Agreement shall be governed by the United States Arbitration Act. An arbitration award rendered pursuant to this Section shall be final and binding on the parties and may be submitted to any court of competent jurisdiction for entry of a judgment thereon. All costs of arbitration, including, without limitation, attorneys' fees, shall be borne by the non-prevailing party. Punitive damages may not be awarded in an arbitration proceeding required by this Agreement.

16.  Disclosure of Agreement. In the event Employer has reason to believe this Agreement and its confidentiality provisions and restrictive covenants have or may be breached, Employee acknowledges and consents that this Agreement may be disclosed by Employer, without risk of liability, to the current or prospective employer of Employee or other business entity.

17.  Assignment. This Agreement is personal to Employee and may not be assigned by Employee. This Agreement may be assigned by Employer to any party without the consent of Employee, and the assignee shall be entitled to enforce against Employee the non-compete and non-disclosure covenants of Employee herein contained. Employee further agrees to execute, for the benefit of any proposed assignee, a document acknowledging the agreement of Employee to: (a) be bound by the non-compete and non-disclosure covenants set forth herein

4

subsequent to any proposed assignment; and (b) consent to the enforcement of such covenants by such assignee against Employee.

THE REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK

IN WITNESS WHEREOF, the parties have set their hands hereto as of the date first above written.

EMPLOYEE

_____
(Signature)

_____
(Printed Name)

STAFFING NOW, INC.

By: _____
Mark Schaul
Executive Vice President